UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

EMIGDIO GONZALEZ PANO,

              Petitioner,

v.

KEVIN RAYCRAFT,

              Respondent.

_____/

Case No. 1:26-cv-1829

Hon. Hala Y. Jarbou

## **OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

## **Discussion**

### I.    **Procedural History**

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, assume jurisdiction over this matter and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 either ordering Respondent to release Petitioner or ordering Respondent to conduct a bond hearing to satisfy the requirements of due process. (Pet., ECF No. 1, PageID.7.)

In an order entered on June 22, 2026, the Court directed Respondent to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 5.) Respondent filed a response on June 25, 2026. (ECF No. 6.)

## II.    Factual Background

Petitioner is a native and citizen of Mexico who first entered the United States without inspection in or before 2004. (Pinson Decl., ¶ 4, ECF No. 6-1, PageID.29.) In 2004 and again in 2006, ICE agents detained Petitioner in Houston, Texas. (*Id.*, ¶¶ 4–5, PageID.29–30.) Each time, Petitioner accepted ICE's offer of Voluntary Return and returned to Mexico. (*Id.*)

On July 25, 2008, ICE detained Petitioner in Butler County, Ohio, after it was determined that Petitioner again entered the United States without inspection. (*Id.* ¶ 6, PageID.31.) That same day, Petitioner signed a stipulated removal order admitting that he was removable from the United States and accepted a removal order. (*Id.* ¶ 7.) On August 8, 2008, the Cleveland Ohio Immigration Court ordered Petitioner to be removed from the United States. (*Id.* ¶ 8.) On August 12, 2008, ICE removed Petitioner to Mexico. (*Id.* ¶ 9.)

On July 1, 2025, ICE detained Petitioner in Michigan. (*Id.* ¶ 10, PageID.30–31.) The Department of Homeland Security (DHS) reinstated Petitioner's 2008 order of removal. (*Id.* ¶ 10, PageID.31.) Petitioner stated a fear of returning to Mexico. (*Id.*)

On July 11, 2025, Petitioner was transferred to the custody of the United States Marshal's Service. (*Id.* ¶ 11, PageID.31.) While in the custody of the United States Marshals, on September 2, 2025, Petitioner filed a Motion to Reopen his prior removal order in the Cleveland, Ohio Immigration Court. (*Id.* ¶ 12, PageID.31.) On September 23, 2025, the Immigration Court granted the Motion to Reopen. *(Id.* ¶ 13, PageID.31.) On October 14, 2025, DHS filed a Motion to Reconsider requesting that the Immigration Court reconsider the prior ruling. (*Id.* ¶ 14.) On October 23, 2025, DHS's Motion to Reconsider was granted. (*Id.* ¶ 15.) On November 21, 2025,

Petitioner filed an appeal of the denial of his Motion to Reopen with the Board of Immigration Appeals (BIA). (*Id.* ¶ 16.) His appeal remains pending with the BIA. (*Id.*)

On May 7, 2026, Petitioner was convicted of violating 8 U.S.C. § 1326 for illegally reentering the United States after being removed and was sentenced to time served and an assessment fee of $100. (*Id*. ¶ 17, PageID.31–32.) ICE took custody of Petitioner on May 14, 2026, and transported him to the North Lake Processing Center in Baldwin, Michigan. (*Id.* ¶ 18, PageID.32.)

On May 26, 2026, DHS filed a reasonable fear referral package regarding Petitioner with the United States Citizenship and Immigration Services (USCIS). (*Id*. ¶ 19, PageID.32.) Petitioner's reasonable fear claim remains pending. (*Id.* ¶¶ 19–21.) ICE is "typically able to execute removals to Mexico within two weeks after a fear claim is resolved." (*Id*. ¶ 19, PageID.33.)

### III.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

### IV.    Merits Discussion

Petitioner contends that his current detention is unlawful and violates the Due Process Clause of the Fifth Amendment. (Pet., ECF No. 1, PageID.6.) In response, Respondent argues that Petitioner's continued "detention under 8 U.S.C. § 1231(a) remains lawful and does not implicate

the constitutional concerns identified in *Zadvydas v. Davis* 533 U.S. 678, 701 (2001)." (Resp., ECF No. 6, PageID.20–23.)

Section 1231 governs the detention of immigrants subject to reinstated orders of removal, "meaning those aliens are not entitled to a bond hearing while they pursue withholding of removal." *Johnson v. Guzman Chavez*, 594 U.S. 523, 526 (2021). It provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Here, as noted above, Petitioner's order of removal became final in 2008, and was reinstated in July 2025.[1] The 90-day removal period following the order expired well before Petitioner filed the present action. *See id.* § 1231(a)(1) ("The [90-day] removal period begins on . . . [t]he date the order of removal becomes administratively final.").

In *Zadvydas v. Davis*, the Supreme Court held that following the removal period, the Government may continue to detain the noncitizen for a "presumptively reasonable period" of time, which the Supreme Court concluded equaled a total of six months in detention. *See Zadvydas*, 533 U.S. at 701. Following that six-month period, "once [a noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*[2] "[O]nce [a

---

[1] "[R]einstated removal orders are 'administratively final.'" *Guzman Chavez*, 594 U.S. at 534 (2021).

[2] The Court notes that the Supreme Court recently held that § 1231(a)(6) does not require the "Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022). The Court, however, did not reach Arteaga-Martinez's constitutional or *Zadvydas* claims, concluding that such claims were not properly before the Court. *See id.* at 583–84.

noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

After the 90-day removal period has expired, a noncitizen may continue to be detained. *See* 8 U.S.C. § 1231(a)(6). The Supreme Court has held that after expiration of the 90-day removal period, the Government may continue to detain the noncitizen "for a presumptively reasonable period" of time, which the Supreme Court concluded equaled six months. *Zadvydas*, 533 U.S. at 701. After the six-month period, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*.

At the time that Petitioner filed his petition, Petitioner had been detained less than six months by ICE. Petitioner was briefly in the custody of ICE in July 2025, before the U.S. Marshal's Service took custody of Plaintiff. Plaintiff returned to ICE's custody on May 14, 2026. (Pinson Decl., ¶ 18, ECF No. 6-1, PageID.32.) Plaintiff has been in the continuous custody of ICE since May 14, 2026.

"Although the Supreme Court established a six-month period of presumptively reasonable detention," courts have found that *Zadvydas* does "not preclude a detainee from challenging the reasonableness of his detention before such time." *See, e.g.*, *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395–96 (D.N.J. 2025) (citing, *inter alia*, *Zadvydas*, 533 U.S. at 699–701; *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 706–07 (S.D. Tex. 2020); *Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018)); *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020) ("This six-month presumption is not a bright line, however, and *Zadvydas* did not automatically authorize all detention until it reaches constitutional limits." (citations omitted)). That is, during the six-month period of detention, "[t]he presumption of reasonableness is the

default," and "the government bears no burden to justify detention," "but if a person 'can prove' that his removal is not reasonably foreseeable, then he can overcome that presumption." *Id.* at 397 (citations omitted).

In this case, Petitioner has not offered any evidence or argument to prove that "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Moreover, even if the Court were to consider, *arguendo*, that Petitioner has been in custody for more than six months, Petitioner must still provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Petitioner has again not made that showing. Indeed, Petitioner does not mention the likelihood of his removal.

Accordingly, for each of the foregoing reasons, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

## V.  Other Claims and Other Forms of Relief

Because the Court will deny Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition.

### Conclusion

For the reasons discussed above, the Court will enter a judgment denying Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

Dated: July 2, 2026                                   /s/ Hala Y. Jarbou
                                                      HALA Y. JARBOU
                                                      CHIEF UNITED STATES DISTRICT JUDGE

6